```
IN THE UNITED STATES DISTRICT COURT FOR THE
           EASTERN DISTRICT OF OKLAHOMA

JOHN E. WOODS, JR.,              )
                                 )
            Plaintiff,           )
                                 )
                                 ) Case No. CIV-18-338-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
            Defendant.           )
```

## OPINION AND ORDER

Plaintiff John E. Woods, Jr. (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 46 years old at the time of the decision. He has a high school education. He has worked in the past as an arc welder. He alleges an inability to work beginning on March 1, 2013, due to limitations resulting from Parkinson's disease, arthritis, difficulty swallowing, and problems with his neck, shoulders, back, hands, and knees.

## Procedural History

On May 22, 2015, Claimant filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On December 8, 2017, Administrative Law Judge("ALJ") James Stewart conducted an

administrative hearing by video, presiding from Tulsa, Oklahoma. Claimant appeared from Poteau, Oklahoma. On January 1, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 15, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with certain limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error by (1) failing to properly consider the effects of all Claimant's impairments at step two and four of the sequential evaluation; and (2) violating agency policy at step five of the sequential evaluation.[2]

**Step-Two and Step-Four Determination**

In his decision, the ALJ found Claimant suffered from severe

---

[2] Although Claimant lists as an error for review that the ALJ's assessment of the intensity, persistence and limiting effects of his symptoms were not consistent with the evidence, Claimant includes no substantive argument in this regard. Thus, the Court concludes Claimant is not challenging the ALJ's decision on this basis.

4

impairments of degenerative disc disease of the lumbar and cervical spine with facet arthropathy, obesity, mild sensory neuropathy in the bilateral hands, cognitive impairment, learning disability, and borderline intellectual functioning. (Tr. 18). He determined Claimant could perform sedentary work, with other limitations. Claimant must be allowed to alternate sitting and standing, while staying on task, and "[t]he alteration period should allow [Claimant] to sit for up to five minutes if the job requires standing or walking continuously for one hour, staying on task while both sitting and standing, with the process repeated throughout the workday with normal breaks taken into consideration." He cannot climb ladders, ropes, or scaffolds, but he may occasionally stoop, crouch, crawl, kneel, balance, and climb ramps or stairs. Claimant's stooping was "limited to picking up or otherwise manipulating objects that are at knee level or above." He could frequently handle, finger, and feel, and he was limited to occasional overhead reaching. Claimant could have no exposure to concentrated levels of unprotected heights, dangerous moving mechanical parts, fumes, dust, gases, odors, poor ventilation, or other pulmonary irritants, heat, cold, humidity, or vibrations (concentrated level means substantially in excess of that normally found in modern office buildings or light manufacturing facilities). Because of his mental impairments, Claimant was capable of doing "only unskilled work consisting of simple and

5

routine tasks with routine supervision that required only that he be able to understand, remember and carry out simple instructions, given verbally or by demonstration." He could maintain concentration and persist for two-hour periods, and his persistence and concentration could continue over a normal forty-hour workweek. Claimant could relate to supervisors and coworkers on a superficial and work-related basis and could adapt to a work situation. (Tr. 20).

After consultation with the VE, the ALJ determined Claimant could perform the representative jobs of polisher, sorter, and table worker, which the ALJ found existed in significant numbers in the national economy. (Tr. 27). As a result, the ALJ concluded Claimant was not under a disability from March 1, 2013, through the date of the decision. (Tr. 28).

Claimant contends the ALJ failed to properly consider all of his impairments at step two. He asserts the ALJ failed to address his diagnosis of chronic pain syndrome even though the record contains evidence supporting his pain condition.

The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. Rul. 85-28, 1985 WL 56856. At step two, Claimant bears the burden of showing the existence of

an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

To the extent Claimant contends the ALJ failed to find his chronic pain syndrome was a severe impairment at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as an ALJ, in determining a claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems

7

'severe' and those 'not severe.'" *Id*., quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. In fact, the ALJ determined Claimant suffered from severe impairments of degenerative disc disease of the lumbar and cervical spine with facet arthropathy, obesity, and mild sensory neuropathy in the bilateral hands. Since the ALJ did not deny benefits at step two based upon the lack of any severe impairments, his failure to find Claimant's chronic pain syndrome was a severe impairment at step two did not constitute reversible error.

Moreover, although the ALJ did not find Claimant's chronic pain syndrome was a severe impairment at step two, he did consider Claimant's pain in his decision and in formulating the RFC. In the summary of the evidence, the ALJ discussed Claimant's consultative examination with Jimmie Taylor, M.D., in November of 2014, wherein Claimant complained of pain in his knee, neck, and hands. Claimant had not been seen by a doctor at that time. He was assessed with low grade degenerative joint disease, neck and low back, with mild decrease in range of motion, degenerative joint disease in the left knee, and minimal decrease in grip strength. (Tr. 22, 304-10).

He also discussed the consultative examination of Claimant by Theresa Horton, Ph.D., in December of 2014. Dr. Horton determined

8

that Claimant appeared "capable of understanding, remembering and managing mostly simple and somewhat more complex instructions and tasks, particularly those that are routine and repetitive." She found Claimant likely had "difficulty learning new tasks." Claimant was "capable of adequate adjustment to many settings," but he likely did "not do as well in areas that are densely populated and/or fast paced." Dr. Horton assessed Claimant with mild cognitive impairment. (Tr. 23, 312-16).

The ALJ considered Claimant's internal medicine consultative examination with Wojciech Dulowski, M.D., from August 7, 2015. Dr. Dulowski found that Claimant had good coordination and strength was equal in his upper and lower extremities. Claimant complained of back pain and there was slight tenderness in his upper lumbar spine. Passive movement of his extremities was normal. He assessed Claimant with history of chronic back pain-neurologically intact, history of arthritis, and no symptoms of Parkinson's disorder. (Tr. 23, 318-23). Examination of Claimant on August 28, 2015, revealed Claimant was in no acute distress. X rays of Claimant's cervical spine showed mild spondylosis with mild facet and uncovertebral joint arthropathy, and no acute osseous abnormality. (Tr. 23-24, 326). X rays of the lumbar spine from November of 2015 showed findings of mild disc space loss at L5-S1, mild spondylosis and incomplete closure of the posterior neural arch of S1 (Tr. 24, 436). In December of 2015, X rays of the

cervical spine showed no acute findings, no osseous central canal or foraminal stenosis, and minimal degenerative changes. (Tr. 24, 415). X rays of the cervical spine in January of 2016, showed no more than mild degenerative changes. (Tr. 24, 413-14).

The ALJ considered the consultative examination of Claimant with Subramaniam Krishnamurthi, M.D., from April 13, 2016. Claimant exhibited slight tenderness in the cervical spine, but Claimant had normal motor, sensory, and reflex examinations. He walked with a slight limp, but he had a stable gait. Claimant had some difficulty with heel-toe walking and reduced ranges of motion in his neck and back. Although the ALJ determined that Dr. Krishnamurthi's medical source statement suggested Claimant could perform medium work with regard to lifting and carrying, the ALJ determined the form was not completed correctly and because of the ambiguities, the ALJ determined Claimant had an RFC for sedentary work, with an option to alternate sitting and standing, which accommodated Dr. Krishnamurthi's limitation that Claimant could stand or walk no more than one hour at a time. (Tr. 24-25, 330-43).

Claimant argues that even though the ALJ considered all the evidence of physical and mental impairments, it does not support his RFC because the opinions did not account for Claimant's chronic pain syndrome and his records from the Tulsa Pain Consultants. The ALJ noted in the decision that Claimant presented for a pain

management consultation in April of 2016. Claimant could go from a seated to a standing position without difficulty and his gait was normal. He exhibited five out of five strength in all extremities, but he did have decreased range of motion. (Tr. 24-25, 390-93). Although the ALJ did not specifically discuss all the records from Tulsa Pain Consultants, the records do not indicate that Claimant's pain worsened, but instead that he showed improvement with some relief of his symptoms. Moreover, the records do not show that his mental functioning worsened. The records also did not include any work-related limitations in functioning. (Tr. 350-89). Thus, the ALJ did not err in relying on the opinions in the record when assessing Claimant's RFC.

The ALJ's decision demonstrates that he did not simply disregard Claimant's chronic pain syndrome when assessing his RFC. Substantial evidence supports the ALJ's RFC assessment.

**Step-Five Determination**

Claimant contends the VE's testimony that Claimant can perform the job of polisher is inconsistent with the DOT based upon the reasoning level of the job in the Dictionary of Occupational Titles ("DOT"). He argues that the ALJ limited him to performing simple tasks, which limits him to performing jobs with a reasoning level of 1, and the polisher job has a reasoning level of two. Claimant further contends that even though the remaining jobs of sorter and table worker have a reasoning level

11

of one, the jobs only represent a total of 48,000 jobs in the national economy, which does not constitute a significant number of jobs. Claimant further appears to argue that the ALJ's determination at step five is unsupported because he failed to include all Claimant's impairments in the hypothetical questions to the VE.

With regard to the polisher position, even if Claimant is correct that it requires a reasoning level of two and Claimant cannot perform it at that reasoning level, the positions of sorter and table worker remain, which Claimant concedes are a reasoning level of one. However, Claimant contends that these jobs do not exist in significant numbers.

"[T]he issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). "[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy-not just a local area." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (citation omitted).

The VE testified, and the ALJ listed in his decision, that there are 19,000 sedentary sorter jobs and 29,000 sedentary table worker jobs in the national economy. (Tr. 27, 85). The Court finds that 19,000 sorter jobs and 29,000 table worker jobs available in

12

the national economy is significant. *See Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability); *see also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) ("The *Rogers* [*v. Astrue*] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is significant.").

Moreover, to the extent Claimant challenges the ALJ's hypothetical to the VE on the basis that it did not include all of his impairments, as discussed herein, the ALJ's RFC included all the limitations he determined were supported by the evidence.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect

impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The Court finds no error in the ALJ's questioning of the VE. The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). There is no error in the ALJ's step-five determination.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 31st day of March, 2020.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE